# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: K.L.**

**No. 13-0945** (Wetzel County 12-JA-06)

**FILED**

**February 18, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

## MEMORANDUM DECISION

Petitioner Father, by counsel Jeremiah Gardner, appeals the Circuit Court of Wetzel County's August 21, 2013, order terminating his parental rights to K.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine Bond, filed its response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Roger Weese, filed a response on behalf of the child also supporting the circuit court's order. On appeal, Petitioner Father alleges that the circuit court erred in terminating his improvement period without granting an extension and in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2008, K.L.'s biological mother ("the mother")[2] had her parental rights involuntarily terminated to her oldest child C.W.[3] In January of 2009, the mother gave birth to Petitioner Father's first child, J.L.[4] Shortly thereafter, the DHHR filed a petition for abuse and neglect based, in part, on the mother's prior involuntary termination.[5] After receiving services, Petitioner

---

[1] Petitioner Father's counsel notes that this petition for appeal was filed pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967).

[2] The mother is appealing the termination of her parental rights to K.L. only in West Virginia Supreme Court of Appeals Case Number 13-0884.

[3] Petitioner Father is not the biological father of C.W. Because this matter concerns infant children, we follow our traditional practice in cases involving sensitive facts and use only the parties' initials. *See State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[4] The mother is the biological mother of all the children referenced in this memorandum decision.

[5] The record is devoid of any information for the basis of the prior involuntary termination. The record is also devoid of any information as to any additional grounds that the

1

Father and the mother regained custody of J.L. On November 28, 2009, the mother gave birth to Petitioner Father's second child, H.L. The next day, the DHHR filed a petition for abuse and neglect based, at least partially on, the mother's prior involuntary termination of her parental rights to C.W. This petition was dismissed after the preliminary hearing. In June of 2010, the DHHR filed a petition for abuse and neglect against the mother and Petitioner Father based in part on the parents' medical neglect of J.L. and H.L. For reasons that are not apparent to this Court, Petitioner Father and the mother thereafter voluntarily relinquished their parental rights to J.L. and H.L.

Shortly after the mother gave birth to Petitioner Father's third child, L.L., the DHHR filed a petition for abuse and neglect based in part on the prior involuntary termination of the mother's parental rights to her first child, C.W., and Petitioner Father and the mother's voluntary relinquishment of their parental rights to J.L. and H.L. By order entered on January 25, 2011, the Marion County Circuit Court terminated Petitioner Father's parental rights to L.L.

On June 14, 2012, the mother gave birth to Petitioner Father's fourth child, K.L.[6] The following month, the DHHR filed a petition for abuse and neglect against the mother and Petitioner Father based upon the prior involuntary termination and voluntary relinquishment of their parental rights. Following the adjudicatory hearing, Petitioner Father admitted to the prior involuntary termination. After Petitioner Father's admission, the circuit court ordered that K.L. remain in the physical custody of the mother.[7]

On January 31, 2013, the circuit court held a hearing on Petitioner Father's motion for a post-adjudicatory improvement period. After considering the evidence, the circuit court granted Petitioner Father a three-month post-adjudicatory improvement period. As part of this improvement period, Petitioner Father was ordered to: attend alcoholics anonymous meetings; remain sober; submit to weekly random drug screens; continue in-home services and parenting education with Open Horizons; maintain a safe home; appropriately care for K.L.; participate in therapy; and not violate any laws. Shortly thereafter, Petitioner Father became intoxicated and assaulted the mother. As a result, the DHHR filed a motion to terminate Petitioner Father's improvement period. The circuit court held a hearing on that motion in April of 2013 and was advised that Petitioner Father had pled guilty to domestic battery against the mother. Petitioner Father was also facing additional felony charges in Tyler County, West Virginia.[8] By order

---

DHHR may have alleged in the petition for abuse and neglect besides the prior involuntary termination.

[6]This decision does not affect the termination of Petitioner Father's parental rights in the previous abuse and neglect proceedings.

[7]It is unclear from the record if the mother and Petitioner Father are married or if they resided together.

[8]Petitioner Father was charged with driving under the influence and grand larceny in Tyler County.

2

entered on August 21, 2013, the circuit court terminated Petitioner Father's parental rights. It is from this order that Petitioner Father now appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

First, Petitioner Father argues that the circuit court erred in not granting him an improvement period longer than three months. Petitioner Father claims that a three-month improvement period was not enough time to address the issues listed in the family case plan and that his incarceration prevented him from additional compliance.

West Virginia Code § 49-6-12(b) grants circuit courts the discretion to grant an improvement period for any amount of time "not to exceed six months." "It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ." Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). The record is clear that Petitioner Father began receiving services in 2009. In granting Petitioner Father's three-month post-adjudicatory improvement period in this case, the circuit court stated, "[Petitioner Father has] had years and years and years of chances. So there's no reason to have an extended chance in this one." For these reasons, we find no abuse of discretion in the circuit court's decision to limit Petitioner Father's improvement period to three months.

Next, Petitioner Father argues that the circuit court erred in not extending his post-adjudicatory improvement period and terminating his parental rights. Petitioner Father states that he was complying with the terms of his improvement period, but his episodes of "binge drinking" caused him to violate his improvement period. West Virginia Code § 49-6-12(g) grants circuit courts the discretion to extend an improvement period "when the court finds that the respondent has substantially complied with the terms of the improvement period." In terminating Petitioner Father's improvement period, the circuit court stated, "[petitioner father] has no reasonable ability to participate in the improvement period, has violated terms and conditions that were set in place . . . ." This finding was supported by Petitioner Father's testimony. As stated above, Petitioner Father began receiving services in 2009. As part of his improvement

period in the instant case, Petitioner Father was ordered to remain sober and to not violate any laws of this State. However, Petitioner Father testified that during his post-adjudicatory improvement period, he consumed alcohol and then committed domestic battery against the mother.[9] Petitioner Father further testified that his alcohol abuse affected his ability to care for his children. Petitioner Father's counsel also proffered that Petitioner Father was facing additional charges in Tyler County, West Virginia. Taken together, this evidence supports the circuit court's denial of an additional improvement period.

Additionally, the Court finds no error in the circuit court's termination of Petitioner Father's parental rights because there was no reasonable likelihood that Petitioner Father could substantially correct the conditions of abuse and neglect in the near future. West Virginia Code § 49-6-5(b)(3) states that a circumstance in which there is no reasonable likelihood that a parent can substantially correct the conditions of abuse and neglect in the near future includes one in which "[t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" Because Petitioner Father violated the terms of his post-adjudicatory improvement period as stated above, the circuit court correctly terminated Petitioner Father's parental rights as required by West Virginia Code § 49-6-5(a)(6).

Finally, Petitioner Father argues that the circuit court should have considered a dispositional alternative instead of terminating his parental rights while he was incarcerated. This Court has stated:

> When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

Syl. Pt. 3, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

We find no error in the circuit court's decision to terminate Petitioner Father's parental rights while he was incarcerated. While the circuit court's order does not specifically identify why there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future, we decline to grant Petitioner Father relief in this regard due to the overwhelming evidence in this case favoring termination. We find there was overwhelming evidence in the record on appeal to support the circuit court's decision, including the specific evidence that Petitioner Father physically abused the mother while under the influence of alcohol during his post-adjudicatory improvement period. Furthermore, Petitioner Father was convicted of conspiracy to commit grand larceny and third offence of driving on a suspended license

---

[9]Petitioner Father testified that he pled guilty to domestic battery.

during the pendency of the improvement period.[10] Therefore, the circuit court was correct in finding that there was no reasonable likelihood that Petitioner Father could substantially correct the conditions of abuse or neglect in the near future in accordance with West Virginia Code § 49-6-5(b)(3). Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings. Petitioner Father's failure to respond to or follow through with a reasonable family case plan left the circuit court no option other than to terminate Petitioner Father's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court and the August 21, 2013, order is hereby affirmed.

Affirmed.

**ISSUED**: February 18, 2014

**CONCURRED IN BY**:

Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Robin Jean Davis

---

[10]The record is devoid of any information regarding how long Petitioner Father was sentenced for these crimes.